| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO.  4:17-CR-40 |
| | § | |
| | § | |
| KYLE THOMAS DUGGER | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Kyle Thomas Dugger's ("Dugger") *pro se* Motion to Reduce Sentence and for Compassionate Release (#73), wherein he requests that the court reduce his sentence of imprisonment or place him on home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the threat of Coronavirus Disease 2019 ("COVID-19").  The Government filed a response in opposition to the motion (#76).  After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion.  Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.      Background

On July 11, 2017, Dugger pleaded guilty pursuant to a binding plea agreement to Count One of the Indictment charging him with Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b).  In the Statement of Facts in Support of the Plea Agreement, Dugger admitted that he knowingly attempted to persuade, induce, entice, and coerce a minor to engage in sexual activity.  He further admitted that by persuading, inducing, enticing, and coercing a minor under the age of 12 to engage in oral and vaginal intercourse constitutes a

violation of the laws of the State of Texas, including Aggravated Sexual Assault, Texas Penal Code § 22.021.  Additionally, Dugger admitted that he used the the Internet and celluar communications to engage in such activities and that both are means and facilities of interstate and foreign commerce.  On November 15, 2017, the court sentenced Dugger to 188 months' imprisonment, followed by a 10-year term of supervised release.  Dugger is currently housed at Federal Correctional Institution Englewood, located in Littleton, Colorado ("FCI Englewood").  His projected release date is June 30, 2030.

II.   Compassionate Release

    A.   Exhaustion

On December 21, 2018, President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the

court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Dugger submitted a request for compassionate release based on the circumstances raised in the instant motion to the warden of the facility where he is housed on August 12, 2020. Warden B. Greilick denied Dugger's motion for compassionate release.  In his denial, Warden Greilick stated that Dugger was "ineligible for home confinement as a result of [his] current conviction: Attempted Coercion and Enticement of a Minor."  Although Dugger complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment.

Congress did not define "extraordinary and compelling."  Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission").  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL

§ 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C. § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

B.  Medical Condition

In the instant motion, Dugger contends that he is eligible for compassionate release due to his medical conditions. Dugger, age 34, maintains that he suffers from chronic bronchitis, nasal polyps, and obesity. In support of his assertions of medical afflictions, Dugger supplied his BOP medical records. He also claims that he has a family history of hypertension, hyperlipidemia, and "aggressive cancers" that place him at high risk if he were to contract COVID-19. Dugger's reliance on his family history of various medical problems to establish extraordinary and

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

compelling reasons for compassionate release is misplaced. As the Government points out, family history and a fear of developing medical problems do not create a current medical diagnosis, nor do they diminish Dugger's present ability to provide self-care while incarcerated. *See generally United States v. Diggles*, No. 9:15-CR-00024, 2020 WL 6471725, at *3 (E.D. Tex. Sept. 9, 2020), *adopted by United States v. Diggles*, No. 9:15-CR-24, 2020 WL 6450469 (E.D. Tex. Nov. 2, 2020).

The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Here, according to Dugger's Presentence Investigation Report ("PSR"), prepared in 2017, he related the following medical history: cluster/vascular migraines (1994), chronic bronchitis (1999), kidney stone removal (2006), and nasal polyps (2010). Dugger also mentioned that when he was 18 years old, he underwent nasal reconstruction surgery to rectify an injury sustained in his childhood. At the time of the PSR interview, Dugger reported that he was not taking any prescription medications.

According to Dugger's BOP medical records, on October 9, 2020, he reported to sick call requesting an inhaler because of breathing problems due to smoke from wildfires in the area. He explained, "I have chronic bronchitis and the smoke affects my breathing." A nurse practitioner

conducted a pulmonary examination which yielded results within normal limits and noted that there was no indication of respiratory distress. The nurse practitioner prescribed an Albuterol inhaler "due to the low air quality in the area for the past few weeks due to wildfires." Dugger's BOP medical records also reflect that Dugger weighs 211 pounds and is 5'11" tall. Therefore, Dugger's Body Mass Index of 29.4 would classify him as overweight rather than obese. As of November 4, 2020, bronchitis is the only current health problem listed in his BOP medical records and, prior to the October wildfire incident, he had not requested or been prescribed any medication to treat the condition. Probation's report reflects that Dugger is classified by the BOP as a Care Level 1 inmate (less than 70 years old, generally healthy, and with limited medical needs). Dugger's BOP records indicate that he has no medical restrictions, has a regular duty work assignment, and is cleared for food service.

This medical summary does not meet the criteria listed above. None of these medical conditions is terminal or substantially diminishes Dugger's ability to provide self-care. Dugger has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence. "[C]ompassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94. Moreover, granting Dugger compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the United States Court of Appeals for the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's

not yet having served a significant portion of his sentence. *Id.* at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id*. In the instant case, releasing Dugger after he has served only 3 years of his 15-year sentence would similarly minimize the impact of his crime and the seriousness of his offense.

        C.    <u>Family Circumstances</u>

Although the USSG acknowledges that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, it specifies the following qualifying conditions: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii). According to Dugger's PSR, he is divorced and has no children.

Dugger, nonetheless, cites the need to care for his ailing father who suffers from psoriatic arthritis, high blood pressure, and has undergone several surgeries, including a knee replacement and rotator cuff surgery. Dugger's father, William Dugger, submitted a letter in support of Dugger's family circumstances argument, confirming his medical problems. This circumstance falls outside the scope of USSG § 1B1.13 cmt. n.1(C), which applies only to minor children and

registered partners. *United States v. Jenkins*, No. CR 6:03-50, 2020 WL 5984401, at *3 (S.D. Tex. Oct. 6, 2020) (noting that "caring for a sick and/or aging parent is not a qualifying 'family circumstance' under U.S.S.G. § 1B1.13(1)(A)."); *United States v. Johnson*, No. 2:13-231, 2020 WL 3000500, at *2 (S.D. Tex. June 2, 2020) (holding unless the elderly parent is the caregiver of defendant's own minor children, an elderly parent is not covered under USSG § 1B1.13); *United States v. Gonzales*, No. SA-05-CR-561-XR, 2019 WL 5102742, at *3 (W.D. Tex. Oct. 10, 2019) (movant's desire to help his adult daughter and her mother and to become a caregiver for his elderly mother and mentally challenged sister do not present the type of "familial relations . . . covered by the Application Notes 1(C) or 1(D) to U.S.S.G. § 1B1.13."). Hence, Dugger fails to meet the requirements for family circumstances that establish extraordinary and compelling reasons.

### D. Other

Dugger's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the

BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Dugger for any "other" reason. It is well settled that "compassionate release is discretionary, not mandatory." *Chambliss*, 948 F.3d at 693. In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Dugger's situation. Nonetheless, Dugger maintains that his post-sentence rehabilitation, evidenced by a list of courses and programs he has completed, establishes extraordinary and compelling reasons for compassionate release. While the court may consider rehabilitation efforts, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3; *accord* 28 U.S.C. § 994(t); *see United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *accord United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation

10

alone."). Hence, Dugger has not presented any "other reasons" establishing extraordinary and compelling reasons warranting compassionate release.

Dugger expresses concerns regarding the spread of COVID-19 among the prison population. Dugger maintains that if he contracts COVID-19 it will be fatal for him due to prison overcrowding and there being no way to distance himself from other inmates. Nevertheless, as of December 22, 2020, the figures available at www.bop.gov list 40 inmates (out of a total inmate population of 911) and 8 staff members at FCI Englewood as having confirmed positive cases of COVID-19, 657 inmates and 55 staff members who have recovered, and 0 inmates who have succumbed to the disease. Although Dugger expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Dugger, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Woods*, No. 4:11-CR-106-SDJ, 2020 WL 6391591, at *4 (E.D. Tex. Nov. 2, 2020) (noting that "courts have concluded that an inmate's concerns about risks associated with the spread of COVID-19 are not consistent with the policy statement of the Commission as required by Section 3582(c)(1)(A)"); *United States v. Vasquez*, No. CR

2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Dugger has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence to time served.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94. The nature and circumstances of the offense entail Dugger's attempt to persuade, induce, entice, or coerce a minor under 12 years of age to engage in sexual activity. Dugger posted an Internet ad for "Taboo M&D Play" which stated that he sought "M&D fun" was "kink experienced," and had "dabbled in the hush-hush-side before." When an undercover agent saw Dugger's ad and requested more information, Dugger responded that his ad was "self-explanatory," adding, "I'm looking for a sexually dominant relationship with a mother and her daughter. Watching each other get fucked, having one lick my cock clean after I've fucked the other etc etc (sic)."

Dugger repeatedly communicated with an individual ("adult caregiver"), who represented that he or she had access to a minor child and would be willing to let Dugger engage in sexual

activity with the minor child.  He communicated with the adult caregiver via the Internet, a social media application, cellular communications, and digital computer.  Dugger engaged in sexually explicit online and cellular conversations with the minor child's adult caregiver in which he expressed a desire to engage in oral and vaginal intercourse with the child as well as to fondle the child's genitals.  Dugger sent the caregiver photographs of himself, including lying in bed, in the shower, and holding his erect penis.  He also asked the adult caregiver to show the images to the child and introduce him as "someone who likes having special relationships."  The communication thread between the adult caregiver and Dugger captures him describing in graphic detail the sexual acts he wanted to perform on the child and ultimately informing the caregiver, "I got condoms and lube ready to go and I've lived (sic) to my wife about my whereabouts till 9:30."

Dugger sent several links to Internet stories about the sexual exploitation of children, including accounts of an adult male's attraction to a preteen cousin and a father caught raping his 9-year old child.  Most significantly, in his communications with the adult caregiver, Dugger boasted about a previous sexual encounter with a sexual partner and her toddler.  Dugger explained he "was having sex with a partner, and she went and got her two year old brought her into bed with us, and taught her how to touch and suck me while she licked her daughter."  Dugger also discussed his intent to persuade, induce, entice, or coerce the child of the caregiver into engaging in sexual activity, which included topics of interest to the child, acts to make the child feel comfortable with him, how to train or teach the child about sexual contact, and the types of sexual contact that the child would enjoy.  After repeated communications, Dugger arrived at a pre-determined location at which he was expecting to meet the minor child and was arrested by agents.

Moreover, Dugger previously communicated with a minor female on the Internet for approximately 9 months and received more than 35 nude and partially nude photos from the minor.  Dugger maintains in his motion that he should not be considered a danger to the community.  In support thereof, he points to his lack of a criminal history, his paid fines and costs, and his zero disciplinary infractions while in prison.  Duggar also relies on his PSR which states "there is no victim in this case because the Defendant was communicating with an undercover agent."  The Government aptly notes in its response, however, that "[t]here was no live victim in [Dugger's] offense of conviction because thankfully and unbeknownst to Dugger, he was communicating with a member of law enforcement."  In view of the circumstances surrounding his offense of conviction and  Dugger's history of inappropriate sexual conduct with minors, the court cannot conclude that he would not pose a danger to any other person or to the community, if released from prison.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19.  In response to a directive from the former United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement.  *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020).  The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.  Since March 26, 2020, the BOP has placed 19,225 inmates on home confinement.  The March 2020 directive is limited to "eligible at-risk inmates

who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *United States v. Donnell*, ___ F. Supp. 3d ___, No. 4:10-CR-65-SDJ-CAN, 2020 WL 5939095, at *7 (E.D. Tex. Aug. 4, 2020); *Ambriz v. United States*, 465 F. Supp. 3d 630, 633 (N.D. Tex. 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, former Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Dugger's track record is similarly a poor one. Hence, there is no reason to believe that Dugger would not revert to his inappropriate sexual behavior with minors, if released from prison at this juncture.

In short, Dugger has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

III.   Conclusion

Consistent with the foregoing analysis, Dugger's *pro se* Motion for Compassionate Release (#73) is DENIED.

SIGNED at Beaumont, Texas, this 22nd day of December, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE